# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #051

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of October, 2014**, are as follows:

**PER CURIAM**:

2014-B -1067    IN RE: STACY L. MORRIS

Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Stacy L. Morris, Louisiana Bar Roll number 27018, be and she hereby is suspended from the practice of law for three years. It is further ordered that respondent provide an accounting and a refund of unearned fees to the cabdrivers and to the Succession of Doris Mae Lewis, or to the Louisiana State Bar Association's Client Assistance Fund, as applicable. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

SUPREME COURT OF LOUISIANA

NO. 14-B-1067

IN RE: STACY L. MORRIS

ATTORNEY DISCIPLINARY PROCEEDINGS

PER CURIAM

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Stacy L. Morris, an attorney licensed to practice law in Louisiana.

**UNDERLYING FACTS AND PROCEDURAL HISTORY**

In August 2011, in the disciplinary board's docket number 11-DB-081, the ODC filed formal charges against respondent arising out of four client matters. Respondent answered the formal charges and essentially denied any misconduct. The matter then proceeded to a formal hearing on the merits, conducted by a hearing committee over three days in January and March 2012.

In January 2012, the ODC filed a second set of formal charges against respondent in 12-DB-004, arising out of one client matter. Respondent answered the formal charges but could not specifically deny, admit, or stipulate to any allegations of misconduct. The matter then proceeded to a formal hearing on the merits, conducted by a hearing committee in May 2012.

Thereafter, the two sets of formal charges were consolidated by order of the disciplinary board. The board subsequently filed in this court a single recommendation of discipline encompassing both sets of formal charges.

## 11-DB-081

*Count I – The CALA/Day Matter*

In 2004, respondent contracted with "Citizens Against Legal Abuse" ("CALA"), a non-licensed domestic corporation that provided legal services to prospective clients and aggressively advertised its services to the New Orleans minority community as a "non-profit" legal representation resource. During 2004, CALA and respondent maintained adjacent addresses in a duplex on Banks Street in New Orleans. Respondent was advertised as available to represent clients referred by CALA. To facilitate this arrangement, copies of printed attorney-client contracts with the heading "Citizens Against Legal Abuse, Inc., Stacy L. Morris Attorney and Counselor at Law," were given to prospective clients. In exchange for a referral, respondent typically remitted to CALA a percentage or portion of the fee paid by the client, characterizing such payments as "donations." CALA retained primary responsibility for setting, quoting, and collecting legal fees (usually a fixed fee) from prospective clients. After concluding contractual terms with the client, a CALA employee contacted respondent to advise she had been retained and to provide details of the legal matter.

In November 2004, Gail Day, a resident of Illinois, contacted Verna Joseph, a CALA employee, seeking legal representation for her son, Zachary Day, who was facing charges of misdemeanor trespass. Ms. Joseph quoted a $500 legal fee to Ms. Day and sent her an attorney-client contract to sign. Ms. Day then forwarded both the payment and the signed contract to Ms. Joseph. Thereafter, respondent made one court appearance to enroll as counsel of record but did no other work in Zachary's case. Respondent did not communicate with Zachary or Ms. Day about the status of the matter. Another attorney associated with CALA ultimately interceded on Zachary's behalf and resolved the criminal charges.

2

The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f)(5) (failure to refund an unearned fee), 5.4(a) (a lawyer shall not share legal fees with a nonlawyer), 5.5(b) (facilitating the unauthorized practice of law by a nonlawyer), and 7.2(b) (sharing fees with a corporation not licensed to practice law).

*Count II – The Lewis Matter*

In April 2004, Jocelyn Lewis retained respondent to file an appeal on behalf of her grandson, Peter Lewis, following his conviction of second degree murder. Mrs. Lewis was referred to respondent by CALA and she paid Verna Joseph the quoted fixed fee of $1,700. Respondent accepted the representation and enrolled in May 2004, appearing at Peter's sentencing hearing. During the hearing, respondent made an oral motion for appeal and promised the trial judge she would supplement the motion in writing. When she failed to do as promised, respondent had to file an out-of-time appeal, which the court summarily denied. Respondent then abandoned any further efforts to complete the representation. Mrs. Lewis requested a refund of the legal fee she paid, but respondent failed to comply with her request.

The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3 and 1.5(f)(5).

*Count III – The Cabdrivers Matter*

In June 2007, a group of cabdrivers, led by Wadsef Kudsy, hired respondent to file a temporary restraining order enjoining the New Orleans Aviation Board ("Aviation Board") from contracting exclusively with a private company to service

the Louis Armstrong International Airport. Respondent formed "Airport Taxi Cab Drivers, LLC" and entered into individual contracts with approximately 253 cabdrivers. The contracts provided respondent would receive a one-third contingency fee for "any amount recovered in case suit is filed" and called for a $10,000 payment to be used for anticipated litigation expenses to be held in escrow. Based on respondent's verbal representations, the cabdrivers understood the $10,000 payment would be the entire fee for the representation. Respondent later asked for and was paid an additional $11,400, claiming she needed additional funds to pursue the litigation. Respondent induced the cabdrivers to make the second payment by showing them a "draft temporary restraining order." During the representation, respondent filed no pleadings or claims with any agency, board, or court on behalf of the cabdrivers.

In April 2008, when Mr. Kudsy became dissatisfied with respondent's failure to respond to information requests, he sent her a certified letter discharging her from the representation. In the letter, he asked for an accounting and for a return of the unearned portion of the fee, but respondent did not comply with the request. Respondent insisted she had earned the entire $21,400 fee because her informal negotiations with the Aviation Board ultimately led to the relief the cabdrivers were seeking. However, the Aviation Board abandoned the contract proposal for an entirely unrelated reason. Respondent's timesheets do not reflect that she did any substantial work in the matter to justify her retention of the entire $21,400.

The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5 (charging an unreasonable fee), 1.5(f)(2) (payment of fees in advance of services), 1.5(f)(5), 1.15 (safekeeping property of clients and third persons), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

4

*Count IV – The Succession Matter*

Respondent was hired to complete the succession of Doris Mae Lewis. Joanna Lewis, an heir to the succession, signed an attorney-client contract which provided that respondent would receive a $1,500 fixed fee. In August 2008, respondent filed a petition for possession in Orleans Parish Civil District Court, asserting that there was no need to appoint an administrator because the succession was essentially debt-free. In actuality, the estate was over $18,000 in debt, primarily related to the last illness of the decedent. Based on respondent's representations, the judge signed a judgment of possession, placing the heirs in possession of the estate assets and concluding the succession.

In December 2008, respondent filed an application with the court seeking to appoint an administratrix in the succession without disclosing that a judgment of possession had previously been signed and the succession closed. A different judge from the Orleans Civil District Court signed an order appointing Dana Lewis as administratrix.

One of the decedent's assets consisted of a checking account containing $7,258.10 in deposits. Stating that she intended to open an estate account and pay the estate's outstanding bills, respondent instructed Joanna to withdraw the entire sum from the checking account and give the funds to her paralegal. Joanna did so, and respondent deposited the funds into her law office account at Regions Bank. She subsequently converted all or part of the proceeds to her own use. Respondent never opened an estate account or paid any outstanding estate debts from the proceeds, nor did she refund any portion of these sums to the heirs. During her sworn statement, respondent expressly denied ever receiving or depositing the funds into her law office account.

The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.15, 3.3(a) (candor toward the tribunal), and 8.4(c).

*Hearing Committee Report*

As previously stated, this matter proceeded to a formal hearing on the merits, conducted by the hearing committee over three days in January and March 2012. Following the hearing, the committee issued its report. The committee made the following findings based upon the evidence and testimony presented at the hearing:

Count I - Zachary Day and Gail Day testified by telephone from Chicago. Zachary testified that after being arrested in New Orleans in November 2004, he contacted his mother, who in turn contacted CALA and sent the agency $500. A lawyer, whom he believed to be respondent, appeared in Municipal Court with him for his arraignment and entered a not guilty plea on his behalf. A May 2005 trial date was selected. Zachary then heard nothing further concerning his case although Ms. Day testified that she made numerous attempts to contact respondent. Zachary and his mother traveled to New Orleans for the trial, but respondent could not be located and an unknown, unnamed attorney present at the CALA office went to court with them and secured a dismissal of the criminal charges.

Respondent testified that although she had accepted some cases from CALA as a referring agency, she did not handle Zachary's legal matter. She denied the signature on the attorney-client contract was hers and denied she had ever spoken with either Zachary or his mother, or that she had any involvement in his case.

Considering this testimony, the committee found the ODC failed to prove by clear and convincing evidence that respondent was hired to represent Zachary Day. As both Zachary and his mother testified by phone, neither was present before the

6

committee to make a physical identification of respondent. Complicating matters is that no evidence as to CALA, other than the Articles of Incorporation, or any testimony from any officer/employee of CALA was provided. While respondent's work with CALA is concerning, the ODC failed to submit sufficient proof concerning its involvement. Based on this reasoning, the committee recommended Count I be dismissed.

Count II – Respondent was hired, through CALA, to appeal Peter Lewis' criminal conviction. Jocelyn Lewis paid CALA's Verna Joseph $1,700 in connection with this matter. No attorney-client contract between respondent and Mr. Lewis was introduced into evidence, and respondent testified that she was only paid $700 to represent Mr. Lewis. Respondent testified that she earned this fee by appearing at two hearings and that she orally moved the court to appoint the Louisiana Appellate Project as Mr. Lewis' appeal counsel.

From the record, the committee found it is clear respondent did not timely file Mr. Lewis' appeal, although she did file an "out of time" appeal, albeit in an improper jurisdiction. Respondent also requested that the court allow her to withdraw as counsel. After both the motion to withdraw and the motion for out of time appeal were denied, respondent did no further work in the matter. An attorney for the Louisiana Appellate Project testified that she prepared and filed the appeal and that it was accepted and considered by the court of appeal.

The committee concluded that respondent initially enrolled as counsel for Mr. Lewis and then did not timely or correctly file an appeal. Nevertheless, it does not appear that respondent's actions/inactions had any effect, as the Louisiana Appellate Project filed an appeal which was accepted by the court of appeal. Furthermore, no written contract between respondent and Mr. Lewis was introduced into the record. Therefore, the committee determined the ODC failed to prove an attorney-client contract by clear and convincing evidence, or that

7

respondent failed to do what she was supposed to have done, or that she did not earn the $700 she claims to have received. Based on this reasoning, the committee recommended Count II be dismissed.

Count III - It is unclear whether Mr. Kudsy was acting on behalf of the other cabdrivers when he terminated respondent's representation and requested a return of funds. It is difficult to understand why respondent would enter into contingency fee contracts with the individual cabdrivers when she was to represent their collective interests against the Aviation Board's taxi management plans. Apparently, it was her intent to "pool" the costs she received and to handle the representation as a joint representation of all cabdrivers concerned with the actions of the Aviation Board. While her handling of a matter on behalf of hundreds of individuals (albeit with similar/identical positions) under individual contracts is troubling, a far greater concern is respondent's failure to place the funds into a trust account or to provide her clients with an accounting of the costs incurred. Moreover, respondent claimed that she used these costs in connection with the representation of her clients, but a "spreadsheet" of claimed expenses submitted after the hearing reveals that most entries were payments to her office staff and a paralegal. Payments for ordinary secretarial and staff services are considered to be part of a lawyer's overhead costs and may not be passed on to a client, and charges for paralegal services are not chargeable to a client except with the client's consent and where the lawyer's fee is based upon an hourly rate.[1]

Based on these findings, the committee determined that respondent violated Rule 1.4 by failing to communicate with Mr. Kudsy as to the status of her representation, Rule 1.5(f) by failing to refund an unearned fee, and Rule 1.15 by admittedly failing to place what the contract calls "costs" in a trust account and by

_____

[1] See Rule 1.8(e)(3) of the Rules of Professional Conduct.

failing to provide an accounting to Mr. Kudsy at the termination of the attorney-client relationship.

Count IV - The crux of the complaint is that respondent withdrew $7,258.10 from the decedent's bank account, deposited it into her own checking account at Regions Bank, and then converted part or all of the funds to her own use. Respondent claimed she "thought" her account at Regions Bank was a trust account, although it was actually her operating account from which various checks were paid to her former paralegal and secretary. Following the hearing, respondent submitted a spreadsheet of payments out of the Regions account, which included payments to her office staff and herself, presumably in an attempt to support her claims that the funds transferred from the decedent's account to her account were used for legitimate succession related purposes. Respondent admitted that no expense reconciliation was provided to the succession representatives.

The committee found respondent knowingly violated Rule 1.15 as she moved funds from the estate directly to her personal checking account, Rule 3.3(a) as she misled the committee as to the existence of her trust account, and Rule 8.4(c) by moving the estate's account funds directly to her checking account and failing to account for those funds which were, at the very least, partially unearned.

The committee determined respondent's actions were knowing and caused serious or potential injury to her clients. Citing the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the applicable baseline sanction in Count III is suspension and in Count IV is disbarment.

In aggravation, the committee noted the conversion of the succession funds to respondent's personal use (Count IV) and her failure to provide any accounting to the cabdrivers (Count III) are serious matters reflecting on the integrity of respondent and on the legal profession. The committee did not detect any

particular remorse by respondent, noting her willingness to only admit to somewhat sloppy bookkeeping practices.

In mitigation, the committee found inexperience in the practice of law (admitted 2000). The committee noted that since 2001, respondent has been a sole practitioner working from her home, and thus, may have lacked the value of professional mentoring relationships. Respondent has also devoted a substantial portion of her practice to representations that serve the public interest, in the areas of criminal defense and other under-served areas of the community.

Under these circumstances, the committee recommended disbarment. The committee further recommended respondent reimburse $7,258.10 to the Lewis succession and that she be assessed with all costs of these proceedings.

The ODC filed an objection to the hearing committee's factual findings and legal conclusions.

## 12-DB-004

In 1981, Ernest McGee was convicted of second degree murder in Orleans Parish Criminal District Court. After his direct appeal was denied, Mr. McGee filed a *pro se* application for post-conviction relief. The judge ordered a hearing in 1999. A series of delays ensued involving successive attorneys who enrolled on Mr. McGee's behalf and then withdrew. By September 2003, no hearing had been held in the matter. Mr. McGee's family then retained respondent to represent him at the hearing.

In October 2003, respondent appeared in court and enrolled as counsel. With respondent present, the court ordered the matter re-fixed for November 2003. Respondent failed to appear as ordered and failed to appear at any of the subsequent re-settings. She finally appeared in court in September 2004, at which time the court instructed her to produce a copy of the original *pro se* application

and then re-fixed the matter to December 2004. Respondent failed to honor the court's instructions and failed to appear at any subsequent court settings.

In the interim, Mr. McGee's siblings repeatedly tried to contact respondent to learn the status of the matter and to discover what actions she was taking on behalf of their brother. Respondent did not respond to their requests.

The post-conviction issue remained unresolved. In October 2007, Mr. McGee filed a disciplinary complaint with the ODC seeking a refund of unearned fees. Respondent answered the complaint, denying that she had agreed to represent Mr. McGee at the post-conviction hearing or that any unearned fee question was presented by her withdrawal from the representation prior to the conclusion of the post-conviction process.

The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.2 (scope of the representation), 1.4, and 1.5(f)(5).

*Formal Hearing*

As previously indicated, this matter proceeded to a formal hearing on the merits, conducted by the hearing committee in May 2012. Following the hearing, the committee issued its report.

*Hearing Committee Report*

After considering the testimony and evidence presented at the hearing, the hearing committee made factual findings consistent with the underlying facts set forth above. The committee found the testimony of respondent to be credible and, in large part, the testimony of the entire McGee family to be inconsistent or not credible. In consideration of this testimony, the committee made the following additional factual findings:

The exact amount of the fee agreed upon and actually paid for the representation is unknown, although Mr. McGee claims $3,500 was paid to respondent. The evidence establishes that at least $1,050 was paid and that respondent appeared in court on Mr. McGee's behalf on September 4, 2003, October 21, 2003, and September 30, 2004. The evidence is unclear whether respondent provided the State with a copy of Mr. McGee's application for post-conviction relief which had been filed in 1999. However, the State filed a response to this application in 2007.

At the time of the formal hearing, respondent did not have a copy of Mr. McGee's file as her office and its contents were destroyed during Hurricane Katrina. Based upon her past work practices, however, respondent would have met with Mr. McGee at the courthouse or at the parish prison during the representation and would have researched his application for post-conviction relief by reviewing his entire criminal matter. Her work would have included legal research and pre-trial work.

Based upon her past work practices, respondent's communications regarding the case would have been directed to her client. As a courtesy to the family, she would also have talked to Mr. McGee's brother, David, about public information concerning the case. Respondent would have communicated with Mr. McGee in writing, by phone, or by face-to-face contact while he was at the courthouse for a hearing. She would also have requested that he be remanded to the parish prison so she could have hands-on contact with him. On February 10, 2004, Mr. McGee was ordered to Orleans Parish Prison from Angola State Penitentiary. While the evidence does not reflect whether the transfer was requested by respondent, Mr. McGee admitted that respondent had transferred him for a court appearance on that day. In 2005, respondent was discharged from the representation, and another attorney was hired to represent Mr. McGee. In 2010, Mr. McGee's application for

12

post-conviction relief was dismissed on the basis that it was repetitive and did not warrant relief pursuant to La. Code Crim. P. art. 930.3.

Based on these factual findings, the committee determined the ODC did not prove a violation of Rules 1.3 or 1.4 by clear and convincing evidence. Respondent credibly described her usual work practices in representing criminal clients in post-conviction relief matters, showing she would have adequately researched and prepared the McGee matter and appropriately participated in the related court hearings. The committee accepted respondent's testimony regarding her communications with Mr. McGee and his family, finding such communications would have been reasonable and in compliance with her obligations under the Rules of Professional Conduct.

However, the committee did find a technical violation of Rule 1.5(f)(6), noting that after Mr. McGee filed his complaint, respondent had an obligation to place the amount of the disputed fee into her trust account and suggest means for a prompt resolution of the dispute. In explanation for her failure to comply with this obligation, respondent stated that she believed the complaint did not have merit and that in the event the allegations were proven true, she would be ordered to refund the fees. The committee determined that respondent's interpretation, although technically incorrect, was understandable because the ODC had originally dismissed Mr. McGee's complaint. The committee also determined that based upon her testimony, respondent earned a fee of at least $3,500 for the representation. Given the amount of work she performed in the case, the committee felt respondent understandably would have thought that no refund was owed. Under the circumstances, the committee concluded no formal discipline or sanction should be imposed in this matter.

The ODC filed an objection to the hearing committee's recommendation to dismiss the formal charges.

*Disciplinary Board Recommendation*

After reviewing the consolidated matters, the disciplinary board determined the hearing committees' findings of fact are supported by the record and are not manifestly erroneous. As to 12-DB-004, the board adopted the factual findings and legal conclusions of the committee as well as its recommendation that the formal charges be dismissed for lack of sufficient evidence. As to 11-DB-081, the board found the committee's findings ignore several key facts:

Count I – The committee's determination that there was insufficient evidence to establish that respondent had agreed to represent Zachary Day or handle any portion of his case does not amount to manifest error. However, the committee failed to make several important factual findings with respect to respondent's relationship with CALA, which are evident in the record.

The record establishes that respondent worked with CALA on a number of cases, even sharing a building with the agency at one point. The record contains various pleadings respondent prepared and filed that identified her as an attorney affiliated with CALA. Respondent admitted CALA periodically referred cases to her and that she paid for these referrals. In her sworn statement, respondent testified that she considered the cases to be "free work," as she was not making much money after sharing 50% of the retainer fees with CALA. The record contains printouts from CALA's website indicating CALA was not a recognized law firm authorized to practice law. Respondent identified the founder/owner of CALA and several CALA employees, none of whom are attorneys. CALA advertised its services via the website and may have passed out cards to attract prospective clients. CALA also retained primary responsibility for setting, quoting, and collecting legal fees from prospective clients.

Had the committee made the foregoing findings of fact in connection with respondent's fee-sharing arrangement with CALA, it would have had sufficient evidence to conclude that respondent violated Rules 5.4(a), 5.5(b), and 7.2(b).

Count II – The record demonstrates respondent enrolled as counsel for Peter Lewis in open court during the sentencing hearing. Respondent knew the time delay for appealing was thirty days from the date of sentencing, a fact explained by the judge at sentencing. Although respondent's motion to appoint the Louisiana Appellate Project to handle the appeal was denied, she took no further action and ceased communicating with Mr. Lewis or his family. Respondent also had no further contact with Ms. Joseph or anyone at CALA regarding the status of the appeal. Based on the foregoing, respondent violated Rule 1.3.

The committee found it difficult to ascertain whether respondent did what she agreed to do and earned the $700 she received, but failed to consider that the Lewis family actually paid $1,700 for the representation. Whether respondent received the entire amount or only a portion because she shared fees with CALA is completely irrelevant. Respondent's claim to have earned her fee by spending countless "empty hours" on the matter is not supported by the record. At most, the evidence reveals respondent appeared at one or two hearings, orally moved for an appeal, and filed a very basic and improper motion for an out-of-time appeal. She was obligated to either refund the unearned portion of the fee or deposit an amount representing the disputed portion into a trust account. Respondent not only failed to do this, but she also failed to provide her clients with an accounting of the fees she claimed to have earned. Based on the foregoing, respondent violated Rule 1.5(f)(5).

Count III – The committee correctly concluded respondent violated Rules 1.4, 1.5(f)(2)(5), and 1.15, but failed to address the additional allegations.

According to the terms of the attorney-client contract, $100 was to be collected from every cabdriver, deposited into respondent's trust account, and applied to costs and expenses as they accrued. The funds were not handled in accordance with these terms or as dictated by the Rules of Professional Conduct. Respondent testified that the $21,400 she received was actually an advance on costs and expenses, which included payments made to her office staff. Such payments are generally considered as part of the attorney's overhead unless otherwise specified in the representation agreement. The contract did not expressly provide for these payments. Respondent had no legal basis for charging the cabdrivers for work performed by her staff and no reasonable explanation for incurring $21,400 in costs and expenses during her representation. Based on these facts, respondent violated Rule 1.5.

Additionally, there is sufficient evidence in the record to establish that respondent engaged in dishonest conduct. Respondent presented a "draft temporary restraining order" to induce the cabdrivers to pay the second advancement, claiming she needed funds to pursue litigation. Although she claimed her "informal negotiations" with the Aviation Board ultimately led to the relief the cabdrivers were seeking, the cabdrivers contended that the contract proposal was abandoned because the Aviation Board was unable to obtain the minimum number of bids required by city ordinance, and thus, litigation was never a real possibility. Respondent's invoices do not reflect any meaningful or substantial work that would justify her retention of the entire $21,400 in advancements. Based on these facts, respondent violated Rule 8.4(c).

While it is clear respondent failed to communicate with her clients and keep them reasonably informed about the status of their case, there is no evidence that she failed to act with reasonable diligence and promptness in representing them. The evidence in the record is not sufficient to establish a Rule 1.3 violation.

Count IV – The committee correctly concluded respondent violated Rules 1.15, 3.3(a), and 8.4(c), but failed to address the allegation regarding Rule 1.1(a).

Throughout these proceedings, respondent has referred to herself as a criminal defense attorney with a good deal of experience in criminal court. However, it is obvious she lacked the requisite legal knowledge, skill, thoroughness, and preparation to handle a succession matter, evidenced by her inconsistent filings and the fact that the matter remains unresolved more than four years later. Thus, the record contains sufficient evidence to conclude respondent lacked the skill necessary to handle the succession, in violation of Rule 1.1(a).

Respondent violated multiple duties owed to her clients, the public, and the legal profession. Her actions were knowing, if not intentional, and caused actual injury to her clients. Citing the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined that the applicable baseline sanction is disbarment.

In aggravation, the board found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and indifference to making restitution. In mitigation, the board found the absence of a prior disciplinary record and a delay in the disciplinary proceedings. The board also found that respondent suffered from various illnesses during the time of her misconduct, that she worked primarily as a solo practitioner since 2001 without the benefit of professional mentoring relationships, and that she devoted a substantial portion of her practice to representations in the public interest in under-served areas of the community.

In determining an appropriate sanction, the board acknowledged the baseline sanction is disbarment, but recognized the court has sometimes imposed lesser sanctions. Considering the prior jurisprudence in light of the compelling mitigating factors present, the board concluded that a one year and one day suspension from the practice of law, which will necessitate a formal application for

reinstatement, is the appropriate sanction for respondent's misconduct. The board also recommended that respondent be ordered to pay restitution to the cabdrivers and in the succession matter, and that she be cast with all costs and expenses in this matter.

The ODC filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

## DISCUSSION

Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. *In re: Banks*, 09-1212 (La. 10/2/09), 18 So. 3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. *See In re: Caulfield*, 96-1401 (La. 11/25/96), 683 So. 2d 714; *In re: Pardue*, 93-2865 (La. 3/11/94), 633 So. 2d 150.

The record in this consolidated matter supports the hearing committees' factual findings, as modified by the disciplinary board. Respondent neglected a legal matter, failed to communicate with a client, charged an unreasonable fee, failed to refund unearned fees, converted client funds, made false statements to the ODC, shared legal fees with a nonlawyer, facilitated the unauthorized practice of law by a nonlawyer, shared fees with a corporation not licensed to practice law, and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. This conduct violated the Rules of Professional Conduct as found by the disciplinary board.

18

Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. *Louisiana State Bar Ass'n v. Reis*, 513 So. 2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Whittington*, 459 So. 2d 520 (La. 1984).

Respondent acted knowingly and caused actual harm to her clients, the public, and the legal system. The record supports the aggravating and mitigating factors found by the board. According to the ABA's *Standards for Imposing Lawyer Sanctions*, the applicable baseline sanction is disbarment.

In considering the issue of sanction, we focus primarily on respondent's most egregious misconduct – her conversion of $21,400 belonging to the cabdrivers and $7,258 belonging to the heirs of Doris Mae Lewis. The record reflects that respondent has not paid any restitution to her clients in these matters. While disbarment would ordinarily be appropriate under such circumstances, *see Louisiana State Bar Ass'n v. Hinrichs*, 486 So. 2d 116 (La. 1986), we find that in light of the mitigating circumstances present in this case, a downward deviation to a three-year suspension from the practice of law is warranted.

Accordingly, we will suspend respondent from the practice of law for three years. We will also order respondent to pay restitution to the cabdrivers and in the succession matter.

**DECREE**

Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Stacy L. Morris, Louisiana Bar Roll number 27018, be and she hereby is suspended from the practice of law for three years. It is further ordered that respondent provide an accounting and a refund of unearned fees to the cabdrivers and to the Succession of Doris Mae Lewis, or to the Louisiana State Bar Association's Client Assistance Fund, as applicable. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.